UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LEE JONES, JR., Individually and on behalf of all similarly situated employees; <br><br>PLAINTIFF, <br><br>V. <br><br>R&A TOWING, LLC, MILSTEAD AUTOMOTIVE, LTD, MILSTEAD MANAGEMENT, LLC, AMY MILSTEAD, <br><br>DEFENDANTS. | § § § § § § § § § § § § § § § | NO: 4:21-CV-618 <br><br>COLLECTIVE ACTION COMPLAINT <br>JURY DEMAND |

# Plaintiff's Original Complaint

Michael Jones, individually and as the class representative on behalf of all similarly situated employees, upon personal knowledge as to himself, and upon information and belief as to others, alleges the following:

## I. Summary

1. Plaintiff is a wrecker driver. Defendants were Plaintiff's joint, single, or successor employer until on or about February 14, 2020, when Plaintiff's 13-year employment was unlawfully terminated. Defendants' adverse employment action was retaliation for Plaintiff's contemporaneous protective leave under the Family Medical

Leave Act ("FMLA"), or both. Plaintiff sues to recover damages incurred because of Defendants' unlawful retaliation.

2. Plaintiff was a non-exempt employee. Defendants did not pay Plaintiff an hourly wage. Instead, they paid Plaintiff a commission. Plaintiff regularly worked more than forty hours in a workweek. But Defendants did not pay Plaintiff an overtime wage calculated on his regular hourly wage. Plaintiff sues to recover minimum and overtime wages under the Fair Labor Standards Act ("FLSA") for Defendants' unlawful pay practices.

3. Plaintiff sues on behalf of similarly situated wrecker drivers and asks for collective action for all those that join the suit.

## II. Jurisdiction and Venue

4. The Court has original jurisdiction under 28 U.S.C. § 1331 because the matter is a federal question under 29 U.S.C. § 216.

5. Venue is proper in the Houston Division of the Southern District of Texas because Defendants reside and conduct busines in this District. 28 U.S.C. § 1391.

## III. Parties

6. Jones is an individual residing in Texas; parties may serve him through his undersigned attorneys.

7.      Defendant R & A Towing, LLC is a Texas limited liability company that resides and conducts business in Texas. Its corporate office is located at 29707 W. Hawthorne Dr., Spring, Texas 77386, and it may be served through its registered agent Dossey & Jones, PLLC, 25025 I-45 North, Suite 575, The Woodlands, Texas 77380.

8.      Defendant Milstead Management, LLC is a Texas limited liability company that resides and conducts business in Texas. Its corporate office is located at 29707 W. Hawthorne Dr., Spring, Texas 77386, and it may be served through its registered agent Dossey & Jones, PLLC, 25025 I-45 North, Suite 575, The Woodlands, Texas 77380.

9.      Defendant Milstead Automotive, Ltd. Is a Texas Limited Partnership, its general partner is Milstead Management, LLC. Its corporate office is located at 29707 W. Hawthorne Dr., Spring, Texas 77386, and it may be served through its registered agent Dossey & Jones, PLLC, 25025 I-45 North, Suite 575, The Woodlands, Texas 77380.

10.     Defendant Amy Milstead is an individual and an officer and manager for Defendants Milstead Management, LLC and R & A Towing, LLC. She may be served at 1415 Spring Hills Drive, Spring, Texas 77386 or wherever she may be found.

## IV. Facts

### A. Joint and Successor Employer and Enterprise Coverage Facts

11. During all relevant times, Defendants R&A Towing, Milstead Automotive, and Milstead Management, LLC were and, upon belief remain, a joint, single, or continuous enterprise under Defendant Amy Milstead's operation or common control for the common business service of running a garage and wrecker services for profit.

12. Defendant Amy Milstead is the Manager of Milstead Management, LLC and R & A Towing, LLC.[1]

13. Defendant Milstead Management, LLC is the General Partner of Milstead Automotive, Ltd.[2]

14. R & A Towing, LLC assumed the assets and liabilities of Milstead Automotive, Ltd in or around September 2019; yet it remained a joint, single, or successor entity of one or more the other Defendants.[3]

15. Amy Milstead has substantial control over all corporate Defendants.[4]

---

[1] Exhibit A
[2] Exhibit B
[3] *See* Exhibit C
[4] *See* Exhibits A, B, and C.

16. Defendants share one business location at 29707 W. Hawthorne Dr., Spring, Montgomery County, Texas 77386. But R & A Towing lists Amy Milstead's residential address as its registered address.

17. Defendants, singularly or jointly, employ more than 50 employees within 75-mile radius of its place of business.

18. Defendants do not advertise interstate-services.[5]

19. Defendants are not primarily engaged in the business of selling automobiles or the like.[6]

20. Defendants' primary purpose is a non-carrier commercial garage.[7]

21. Defendants have employees that engage in commerce, including, but not limited to, contracting with the United States Postal Service for the repair of vehicles engaged in transporting the US Mail.

22. These USPS contracts' purpose is for the maintenance and repair of vehicles for the USPS, an interstate carrier.

23. Defendants employ wrecker drivers assigned to postal stations to retrieve and transport USPS vehicles.

---

[5] *See* Exhibit D MILSTEAD AUTOMOTIVE, milsteadautomotive.com (last visited Feb. 10, 2021); Exhibit E R&A Towing, randatow.com (last visited Feb. 10, 2021).
[6] *Id.*
[7] *Id.*

24. These wrecker drivers' primary purpose is to take the USPS vehicles to third-party mechanics, for which the USPS pays, and Defendants prosper.

25. Defendant R&A Towing's sole purpose is the service of those USPS service contracts.

26. Upon information and belief of Defendants' known contracts, locations, and Plaintiff's earned wages, Defendants individually have gross annual sales exceeding $500,000.00.[8]

### B. Non-Exempt Employment Facts

27. Jones worked for Defendants from February 2008 through February 14, 2020. R & A Towing became Jones employer in November 2019. R & A Towing was a successor employer or single integrated employer.[9]

28. For the first two years, Jones was a dispatched wrecker driver taking calls as instructed and finding other opportunities to provide wrecker services.

29. Milstead Automotive permanently assigned Jones as a wrecker driver to the US Post Office at 5302 Galveston Road, Houston, Texas 77017 in 2011. Jones's primary job was to retrieve the Post Office's vehicles when they broke down or were involved in a wreck.

---

[8] *See* Exhibits F and G.
[9] *Id.*

30. Some of these vehicles included the Grumman Long Life Vehicle (aka the USPS Mail Truck), which has a curb weight of less than 10,000 pounds.[10]

31. Jones was responsible for his Post Office's motor pool rarely leaving Harris County or surrounding counties.

32. Defendants did not assign Jones or other similarly situated employees interstate assignment, and he did not have those expectations.

33. If a vehicle needed retrieval, Jones would bring the vehicle back to the Post Office. Jeremy Scrabanek with the US Postal Service would follow USPS procedures for documenting issues. If service or repair were required, Jones would take the vehicle to third-party service garages and bring it back when ready.

34. Jones was neither a mechanic nor a wrecker mechanic. Providing services or repairs were not his primary duty whether at his location or away from Defendants' place of busines, the Post Office, or the third-party garages.

35. Any repairs or services he provided were *de minimums*, nonmechanical repairs that did not affect the safe operation of the vehicles he towed.

36. Jones was not engaged for the primary purpose of requesting, stocking, or dispensing parts.

---

[10] Exhibit H National Postal Museum, Long Life Vehicle available at
https://postalmuseum.si.edu/collections/object-spotlight/long-life-vehicle (last visited Feb. 24, 2021).

37. Jones was not responsible for sales to or obtaining orders from the USPS—Jones's only customer.

38. Jones did not have opportunities to develop business or increase his pay because he did not provide the diagnostics, parts, services, or repairs that Defendants based his wages.

39. Defendants did not pay Jones more than $100,000.00 annually during all relevant times.[11]

40. Jones did not supervise any employees.

41. Jones did not primarily perform office or non-manual work because driving a wrecker requires manual operation.

42. Jones provided the service that allowed Defendants to fulfill requirements to and benefit from its business with the USPS.

### C. Unpaid Overtime Facts

43. Defendants did not keep accurate records of the hours Jones worked, the hourly wage he earned, or the overtime it paid him.

44. Jones worked five twelve-hour shifts Monday through Friday, and a six-hour half-shift on Saturday, 50 weeks a year, excluding federal holidays.

---

[11] Exhibits F and G.

Original Petition—*Jones v. Milstead Automotive, Ltd.*—Pg. 8

45. If the Post Office to which he was assigned had no vehicles that required retrieval or delivery, Jones would not provide other services. But he remained at the Post Office on call ready to provide wrecker services during his shifts.

46. He worked this schedule consistently until December 2019 and again the week of February 11, 2020.

47. Defendants did not pay Jones a salary.

48. Defendants did not pay Jones an hourly wage.

49. Defendants paid Jones a commission of the services and repairs Defendants charged the USPS for the vehicles he towed.

50. Defendants did not guarantee an hourly wage or weekly salary.

51. Defendants paid Jones less wages if he did not work because he towed less vehicles.

52. Defendants did not pay Jones an overtime wage of 1.5 time his regular rates for all hours worked over forty in the workweek. In the alternative, Defendants did not pay Jones his proper overtime wage for all hours worked over forty in the workweek.

53. Defendants intentionally failed to pay Jones overtime pay, and their payment policies were established without regard to Jones's rights to lawful wages.

### D. Unlawful Employment Actions

54. While working his assignment and performing wrecker services, Jones injured his back in late November 2019.

Original Petition—*Jones v. Milstead Automotive, Ltd.*—Pg. 9

55. His injury did not manifest itself until the next day. Jones notified Larry Sarchett, his immediate supervisor, of the injury. Sarchett told Jones a workers' compensation claim was impossible because Jones did not report the injury immediately. Jones protested Sarchett's assertion. Sarchett instead insulted Jones, calling him a "pussy" at one point.

56. After several days of increasing pain, Jones saw his doctor. His doctor ordered him twelve weeks rest and recovery. Jones took twelve weeks medical leave.

57. Jones returned to work Monday, February 10, 2020.

58. On Thursday, February 13, Jones's in-law passed away. He stayed up late attending to family business. Friday morning, Jones called Scrabanek to tell him Jones would be late. Sarchett called back and terminated Jones's employment. Defendants took Jones's work truck that day.

59. Jones was qualified for his position.

60. Jones's protected medical leave were the unlawful reasons for Defendant's adverse employment action.

61. Up until that point, Defendants did not notify Jones of any complaints—except for his request for worker's compensation assistance. Indeed, Defendants regularly recognized Jones in his 13-year tenure.

## V. Collective Action Allegations

62. There are an unknown number of similarly situated current and former non-exempt employees to whom Defendants denied overtime pay in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

63. Jones brings his FLSA claim individually and on behalf of all similarly situated individuals (the Collective Class).

64. An individual is a potential Collective Class member if:

   a. Defendants employ or employed the individual currently or in the three-years before this suit;

   b. Defendants did not pay the individual a weekly salary or guaranteed wage equal to the applicable minimum; and

   c. Defendants did not pay the individual an overtime wage equal to 1.5 times their weekly base wage for all hours worked over forty in the workweek.

65. Defendants know and can readily identify these possible Collective Class members.

66. The Court can review and answer these merit questions collectively because this suit is limited to employees who are presumed non-exempt. Defendants'

failure to pay a weekly salary or other guaranteed wage would exclude those employees from all overtime exemptions requiring a salary element. Nor do Defendants qualify for non-salary overtime exemptions because they are not an intestate motor carrier, are not in the primary business of selling or reselling motor vehicles to the ultimate consumer, and do not qualify for other business or employee specific overtime exemptions. Thus, these discrete questions identify the actual Collective Class harmed by Defendants' FLSA violations and those members' claims, except for damages, do not require individual analysis.

67. Defendants are liable under the FLSA for failing to properly compensate Jones and the Collective Class.

68. Defendants' policy, practice, and patterns were to not pay Jones and the Collective Class overtime compensation of 1.5 times their regular rate for all hours worked over forty per workweek.

69. Defendants' unlawful payment practice was intentional, willful, and repeatedly violated Jones's and the Collective Class's FLSA rights for a proper premium overtime wage for all hours worked over forty hours in the workweek.

70. Defendants' corporate policy was to minimize labor costs by not paying neither an hourly wage nor overtime.

## VI. Causes of Action

### A. Fair Labor Standards Act – Overtime Wages
### (Plaintiff and Collective Class against all Defendants)

71. Plaintiff realleges and incorporates by reference all allegations in the preceding sections.

72. The overtime wage provisions in the FLSA and its federal regulations, apply to Defendants and protect Plaintiff and the members of the Collective Class.

73. Plaintiff and the Collective Class regularly worked in excess of forty hours per workweek.

74. Defendants failed to pay Plaintiff and the Collective Class the premium overtime wages to which the FLSA entitles them.

75. Plaintiff and the Collective Class are owed 1.5 times their regular rate of pay for all hours worked over forty per workweek.

76. Defendants' FLSA violations have caused Plaintiff and the Collective Class damages in the form of unpaid overtime compensation in amounts Plaintiff and the Collective Class will show at trial.

77. Defendants' actions were willful and are liable to Plaintiff and the Collective Class for liquidated damages.

78. Defendants are liable to Plaintiff and the Collective Class for their attorneys' fees and costs associated with prosecuting this claim.

### B.   Violation of the FMLA
### (Plaintiff against Defendants R&A Towing and Milstead Automotive)

79.    Plaintiff realleges and incorporates by reference all allegations in the preceding sections.

80.    Plaintiff is an eligible employee as defined under the FMLA. In the twelve months before his protected leave, he worked more than 1250 hours singularly, jointly or in succession.

81.    Defendants are either single, joint, or successor employers under the FMLA.

82.    The FMLA requires Defendant R&A Towing as Plaintiff's successor, single, or joint employer and Defendant Milstead Automotive as Plaintiff's single or joint employer (collectively "FMLA Defendants") to provide Plaintiff up to twelve workweeks of unpaid leave for a serious health condition that makes [Plaintiff] unable to perform the functions of the position of such employee.

83.    The FMLA also requires these FMLA Defendants to restore Plaintiff to the same position or a position comparable to the one he held before his qualifying absence. Failure to do so violates the FMLA.

84.    Plaintiff's reason for leave was a qualified condition requiring continuous medical treatment, recovery, and care.

85. Plaintiff gave the FMLA Defendants adequate and proper notice of his leave.

86. It is unlawful for these FMLA Defendants to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA.

87. It is also unlawful for an employer to discharge or in any other manner retaliate or discriminate against any employee for opposing any practice made unlawful under the FMLA.

### i. FMLA Interference

88. The FMLA Defendants interfered with Plaintiff's exercise of his FMLA rights when it failed to reinstate him to the job he held prior to his leave.

89. The FMLA Defendants would have reinstated Plaintiff or otherwise not interfere with Plaintiff's FMLA benefits had he not exercised his FMLA rights.

90. The FMLA Defendants' interference with Plaintiff's right to FMLA benefits harmed Plaintiff by depriving him of actual wages.

### ii. FMLA Retaliation

91. The FMLA Defendants terminated Plaintiff's employment in retaliation for taking the FMLA leave.

92. Plaintiff's FMLA leave was at a minimum a factor in FMLA Defendants' decision to terminate Plaintiff's employment.

93. The FMLA Defendants' retaliation against Plaintiff for exercising his FMLA rights harmed Plaintiff by depriving him of actual wages.

94. In all cases, Plaintiff was willing, able, and qualified to perform his duties.

95. The FMLA Defendants are liable to Plaintiff for his actual damages.

96. Plaintiff seeks equitable relief of reinstatement.

97. The FMLA Defendants are liable to Plaintiff for liquidated damages equal to his damages and interest because they did not act in good faith. And the temporal proximity of the adverse employment action and Plaintiff's FMLA leave shows the FMLA Defendants did not have reasonable grounds to believe their actions were not an FMLA violation.

98. The FMLA Defendants are liable to Plaintiff for attorneys' fees and costs for the prosecution of this claim.

## VII. Prayer

Plaintiff, individually, and on behalf of all other similarly situated persons requests that this Court:

### A. FLSA Relief

1. Allow notice of this suit to the Collective Class either through Plaintiff or the Court that informs the potential Collective Class member that Plaintiff has filed this civil

action, the nature of the action, and their right to join the lawsuit if they believe they were denied proper wages;

2. Award Plaintiff and the Collective Class their unpaid overtime wages charged jointly and severally to the Defendants;

3. Award Plaintiff and the Collective Class liquidated damages equal to unpaid overtime wages charged jointly and severally to the Defendants;

4. Issue a declaratory judgment that Defendants' payment practices are unlawful under the FLSA;

5. Award Plaintiff and the Collective Class reasonable attorneys' fees and costs of the action charged jointly and severally to the Defendants; and

6. All other relief Plaintiff or the Collective Class are entitled in law or equity.

Plaintiff, individually, requests that this Court:

### B.  FMLA Relief

7. Award Plaintiff lost wages and other denied compensation arising from the FMLA Defendants' FMLA violations and charges against the FMLA Defendants jointly and severally;

8. Award Plaintiff liquidated damages equal to Plaintiff's FMLA damages and charged against the FMLA Defendants jointly and severally;

9. Award Plaintiff Prejudgment interest at the prevailing rate for Plaintiffs' FMLA damages charged against the FMLA Defendants jointly and severally;

10. Award Plaintiff Post-judgment interest at the prevailing rate for Plaintiffs' FMLA damages charged against the FMLA Defendants jointly and severally;

11. Award Plaintiff equitable relief including reinstatement, or, in lieu, front pay charged against the FMLA Defendants jointly and severally;

12. Award Plaintiff reasonable attorneys' fees and costs of suit for the prosecution of his FMLA claims; and

13. All other relief Plaintiff is entitled in law or equity.

Respectfully Submitted,

Wilson Wehmeyer Themeli, PLLC

/s/ William Carlton Wilson

William "Carl" Wilson
SBOT 24090472
SDTX 2412597
carl@wwtlawyers.com
Sonila Themeli
SBOT 24073588
SDTX 2828237
sthemeli@wwtlawyers.com
12012 Wickchester Lane, 470-B
Houston, Texas 77079
713-670-6891 Office

888-490-3698 Facsimile
Attorneys for Michael Jones Jr.