United States District Court
Southern District of Texas
**ENTERED**
March 09, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL JACKSON, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED EMPLOYEES, *Plaintiffs*, | § § § § § | |
| v. | § § | CIVIL ACTION NO. 4:21-CV-0618 |
| R&A TOWING, LLC, ET AL., *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

This Fair Labor Standards Act (FLSA) case is before the Court on Plaintiffs' Motion for Partial Summary Judgment Against Milstead Automotive, Ltd.[1] ECF 48. Having considered the parties' submissions, argument of counsel at a hearing on the record on October 7, 2022, and the law, the Court GRANTS the Motion in part and orders the parties to submit a proposed date for trial of the remaining issues.

### I. Background

Milstead Automotive, Ltd. (Milstead) is a business offering automotive maintenance and repair services, including towing services, to the general public, commercial businesses, and government entities in Montgomery and Harris Counties. Plaintiff Michael Lee Jones worked as a tow truck driver for Milstead and initiated this action on behalf of himself and others similarly situated alleging that Milstead failed to pay overtime wages as required by the FLSA.[2] After the

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including final judgment. ECF 63. Plaintiffs' claims against all other Defendants were dismissed with prejudice on August 5, 2022. ECF 58.
[2] Jones also asserted a claim for violation of the Family Medical Leave Act (FMLA). That claim is not currently before the Court.

death of Michael Lee Jones, his estate was designated as a member of the collective action and Michael Jackson was substituted as the named Plaintiff in this case. ECF 69.

On September 16, 2021, the Court granted the parties' joint motion and stipulation for notice to the following collective class:

> All individuals employed by Defendants who: (1) perform tow or wrecker operation duties, and (2) who Defendants did not pay an overtime wage for all hours worked over 40 in any workweek, within the three years before the Court's order and thereafter.

ECF 15. Twenty-one individuals opted-in as plaintiffs in the collective action. Plaintiffs now move for partial summary judgment on their claims for overtime wages and liquidated damages and for a ruling that a three-year statute of limitations applies to their claims.

## II. Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). If a moving party who does not bear the burden of proof at trial meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

### III. Analysis

#### A. General FLSA Standards

The FLSA requires employers to pay employees one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(1). To succeed on an FLSA claim for unpaid overtime, a plaintiff must prove "(1) that an employer-employee relationship existed during the time that he worked in excess of forty hours per week; (2) that the employee engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (citing *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 441 (5th Cir.2005)). It is an employer's burden to show that its employee is exempt from the overtime requirement. *Id.* (citing *Samson v. Apollo Res., Inc.,* 242 F.3d 629, 636 (5th Cir.2001)).

Any employer who violates § 207 is liable to affected employees "in the amount of their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated

3

damages." 29 U.S.C. § 216(b). A court has discretion to deny liquidated damages if the employer persuades the Court it acted in good faith. *Id.* § 260. The statute of limitations for a plaintiff to bring an FLSA claim is 2 years from the violation, unless the plaintiff meets his burden to prove the employer's violation was willful, in which case the statute of limitations is 3 years. *Id.* § 255(a).

### B. Milstead's Pay Scheme and the Parties' Contentions

It is undisputed that Milstead did not pay Plaintiffs a straight hourly wage or overtime. Instead, Milstead paid tow truck drivers a commission generally equal to between 25-30% of the gross revenue per towing service. In any week in which a driver clocked over 40 hours, the payroll department divided the commission by the number of hours worked to determine if it equaled at least $10.88 per hour. If not, Milstead paid supplementary wages intended to bring the hourly rate up to $10.88 per hour. ECF 53 at 9-10; 53-1, ¶¶ 7-10.

Plaintiffs contend that Milstead's pay scheme violated the FLSA because they are not exempt employees and Milstead did not pay them overtime as required by § 207(a).[3] Milstead presents the defenses that Plaintiffs are exempt from overtime under the retail and services establishments exemption of § 207(i), and that to the extent it failed to pay any Plaintiff $10.88 per hour in a given overtime week, it is liable only for the missing overtime pay in that week. Plaintiffs contend Milstead has not met its burden on summary judgment and cannot meet its burden at trial to prove the elements of the exemption and therefore Plaintiff is entitled to a finding

---

[3] Plaintiffs' Motion also references at least one employee, William Daw, who allegedly worked more hours than were reported or recorded. ECF 48 at 27. Plaintiffs' Reply clarifies that Plaintiff is not moving for summary judgment on an independent overtime claim based on unrecorded hours or "off the clock work," but introduced the issue of missing pay records to support its claim that Milstead cannot meet its burden to show that it paid all employees at least $10.88 per hour, and to support its arguments regarding Milstead's lack of good faith and willfulness. ECF 55 at 17.

4

of liability. Plaintiff further contends that Milstead has failed to meet its burden in light of the motion for summary judgment to raise a genuine issue of material fact as to whether it acted in good faith when classifying the employees as exempt because the record shows Milstead should have known the pay scheme violated the FLSA, and therefore Milstead is liable for liquidated damages under FLSA §§ 216 and 260. Finally, Plaintiffs contend the record proves as a matter of law that Milstead acted willfully, establishing a three-year statute of limitations for Plaintiffs' FLSA claims. The Court addresses each element of the § 207(i) exemption in Section III.C below, and then addresses the parties' good faith and willfulness arguments in Sections III.D and III.E, respectively.

### C. Milstead has not met its summary judgment burden to demonstrate a fact issue on all the elements of the § 207(i) retail or service establishment exemption.

Section 207(i) provides:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

Because Plaintiffs have met their initial prima facie burden, Milstead, in order to avoid summary judgment on its § 207(i) affirmative defense, must meet its burden to create a genuine issue of material fact on whether: (1) Plaintiffs were employed by a retail or service establishment (an establishment that receives 75% of its annual dollar volume of says from retail services); (2) Plaintiffs were paid a regular rate that is one and one-half times the minimum wage (which is

$10.88 per hour based on the $7.25 per hour minimum wage); and (3) Plaintiffs earned more than 50% of their compensation from bona fide commissions. *Taylor v. HD & Assocs., L.L.C.*, 45 F.4th 833, 838-39 (5th Cir. 2022) (stating that the bona fide commission exemption of §207(i) is an affirmative defense and setting out the elements of the exemption); *Leal v. Magic Touch Up, Inc.*, 855 F. App'x 924, 927 (5th Cir. 2021) (holding that exemption from overtime pay is an affirmative defense and the employer has the burden of proof).

### 1. Milstead has not met its summary judgment burden to demonstrate a fact issue as to whether it derived 75% of its income from retail sales.

In order for an employee to be exempt from receiving overtime pay pursuant to the § 207(i) exemption for employees receiving a commission, "the employee must be employed by a retail or service establishment." 29 C.F.R. § 779.411. For purposes of the FLSA, a "retail or service establishment" is "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."[4] *Id.*; *see also* 29 C.F.R. § 779.24. Determining whether a business fits the retail concept can be difficult because "a precise line cannot be drawn and exact objective standards cannot be established." *Brennan v. Great Am. Disc. & Credit Co.*, 477 F.2d 292, 296 (5th Cir. 1973) (citing 29 C.F.R. §§ 779.312-779.321); *Parker v. ABC Debt Relief Co.*, No. 3:10-CV-1332-P, 2013 WL 371573, at *9 (N.D. Tex. Jan. 28, 2013). DOL regulations indicate that the exemption is meant to apply to "traditional" retail businesses like restaurants and repair shops that are ordinarily available to the general consuming public. *Parker*, 2013 WL 371573, at *9.

---

[4] The 75% of annual dollar volume of sales test was also part of the definition of "retail or service establishment" in the former statutory definition at 29 U.S.C. § 213(a)(2), which was repealed in 1989 but is still applied for the purpose of applying the § 207(i) exemption. *See Parker v. ABC Debt Relief Co.*, No. 3:10-CV-1332-P, 2013 WL 371573, at *8 (N.D. Tex. Jan. 28, 2013).

6

Citing the DOL Field Operations Handbook as authority, Plaintiff asserts that "the retail concept does not apply to establishments which are primarily engaged in performing towing and heavy-duty wrecker services for bus and trucking companies, police departments, or other governmental agencies." ECF 55 at 5. However, Milstead also offers towing services to the general public. ECF 53-1 at 2. Moreover, the Court finds that towing in general is "the type of service that is utilized by the general public in the course of their daily living." *See Parker*, 2013 WL 371573, at *10 (defendant's debt settlement business was not the type of service utilized by the general public in the course of daily living). Although Milstead offers some services that qualify as retail services, to meet the exemption it must show that at least 75% of its annual dollar volume of business derives from retail services. *See* 29 C.F.R. § 779.321(a) ("The fact that the particular establishment may have a concept of retailability, in that it makes sales of types which may be recognized as retail, is not determinative unless the requisite portion of its annual dollar volume is derived from particular sales of its goods and services which have a concept of retailability."). The definition of a "retail sale" has two components: (1) it is not for resale; and (2) it is recognized as retail sales or services in the particular industry. *See* 29 C.F.R. § 779.411. "A sale is made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold." 29 C.F.R. § 779.331.

To avoid summary judgment on its affirmative defense, Milstead must present evidence raising a disputed issue of fact as to whether it met the 75% revenue test in *each* of the years for which Plaintiffs are seeking overtime pay. In response to Plaintiffs' Motion, Milstead has not presented *any* evidence to establish its annual revenue from retail sales for the years 2018 and

7

2021.[5] As for the retail sales element of the exemption for 2019 and 2020, both parties' arguments rely on the same underlying sales figures produced by Milstead (ECF 48-2- 48-9, 48-15; ECF 53-5; Tr. at 10:47 [6]), but they vigorously dispute whether 75% of Milstead's annual dollar revenue in 2019 or 2020 came from "retail sales." Plaintiffs contend that Milstead cannot meet the 75% retail threshold because a significant amount of its 2019 and 2020 revenue was comprised of non-retail sales, such as revenue from government entities (including police departments), the United States Postal Service (USPS), internal sales, construction sales, and fleet and wholesale services. ECF 48; Tr. at 10:23.

In 2019, Milstead generated total revenue of $10,245,322.50, of which $1,591,283.75 was classified as "General Public-Automotive" and $849,319.83 was classified as "House Calls - Towing General Public." ECF 48-2 – 48-5; ECF 53-5. In 2020, Milstead had total revenue of $7,412,130.12, of which $1,485,037.54 was classified as "General Public-Automotive" and $673,953.58 was classified as "House Calls-Towing General Public." ECF 48-6-48-9; ECF 53-5. Therefore, Milstead's evidence shows that approximately 23.8% of Milstead's 2019 revenue and approximately 20% of Milstead's 2020 revenue was derived from sales to the general public, which are typically considered retail in nature. *See Wells v. TaxMasters, Inc.*, No. 4:10-CV-2373, 2012 WL 4214712, at *5 (S.D. Tex. Sept. 18, 2012) (holding that tax services sold to general

---

[5] At the time of the October 7, 2022 hearing, Plaintiffs had an outstanding motion to compel production of financial documents for 2018 and 2021. Defense counsel represented that Milstead had already produced the same financial documents for 2018 and 2021 as it had produced for 2019 and 2020. Tr. at 10:35. However, Milstead did not present any 2018 or 2021 financial documents as summary judgment evidence. Thus, Milstead has fully failed to meet its summary judgment burden for the years 2018 and 2021.

[6] A written transcript of the October 7, 2022 hearing has not been prepared, but the Court has listened to the audio recording. References to the hearing are cited at "Tr. at [approximate time ]."

public were retail (citing 29 C.F.R. § 779.318 ("Typically a retail or service establishment is one which sells goods or services to the general public."))).

Milstead's non-general public sales were to school districts, police departments, the USPS, car dealerships, auto repair shops, commercial businesses, and numerous other entities. *See* ECF 53-5. Sales of services to a business that is an end-consumer may in some cases qualify as retail sales. *See Collins v. Horizon Training Centers, L.P.*, No. CIV.A. 3:02CV1310-L, 2003 WL 22388448, at *8 (N.D. Tex. Sept. 30, 2003) (computer training school was a retail or service establishment even though many of its customers were businesses). But Milstead bears the burden of proving that 75% its sales in the relevant years met the two-part definition of retail sales set out in 29 C.F.R. § 779.411.

Instead of putting forth evidence, Milstead offers the conclusory statement that "[e]xcluding sales of service to the United States Postal Service, government vehicles, school district vehicles and new vehicle transportation, at least 75% of Milstead Automotive's business comes from retail sales: 80.78% for 2019 and 89.47% for 2020." ECF 53 at 20-21. At the hearing, Milstead explained that it characterized as "retail sales" all sales in which the consumer ultimately paid for the service. Tr. at 10:50; *see also* 53-5 at 2 (identifying the sales group "customer pay"). But Milstead cites no authority holding that who pays is dispositive of whether a sale is truly retail.

Milstead's formula classifies non-consensual tows performed at the request of police as "retail sales," despite testimony from its corporate representative, Richard Richter, that for non-consensual police tows Milstead does not set the rates, the end-user has no choice in the matter, and local law enforcement both orders the tow and sets the rate charged to the vehicle owner. ECF 53-2 at 5. Milstead cites *Voyles v. Murray*, 297 F. Supp. 1288 (N.D. Tex. 1969) in support of

9

including police tows in its calculation of retail sales. ECF 53 at 14. But *Voyles* holds only that the fact that some of the defendant's towing business was instigated by the City or Texas Department of Public Safety did not mean the defendant's business, in which "over 75% of the calls for the towing service were made by the individual owner" did not have a retail character. Non-consensual police tows hardly fit the concept of "retail" sales. *See Carlton v. JHook Invs., Inc.*, No. 4:17-CV-00076 KGB, 2019 WL 4784801, at *15 (E.D. Ark. Sept. 30, 2019) (holding that "service calls from public officials do not fall within the traditional understanding of a 'retail concept.'").

Further, Milstead's calculation of its percentage of retail sales includes "fleet services," which, although sold to an end consumer and not for resale, also are not generally recognized as retail. *See* 29 C.F.R. § 779.318 (describing the "characteristics and examples" of retail or service establishments as those that serve "the everyday needs of the community"); *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 208, 86 S. Ct. 737, 748, 15 L. Ed. 2d 694 (1966) (sales to fleets at discount prices are excluded from the retail category). Once fleet services are excluded from Milstead's 2019 and 2020 sales figures, even if Milstead's entire "customer pay" category is included, Milstead falls short of the 75% revenue test for retail and service establishments. ECF 53-5 at 2.

Milstead concedes that the "sales of service to the United States Postal Service, government vehicles, school district vehicles and new vehicle transportation" should be excluded from the category of retail sales. ECF 53 at 20. But excluding those categories of sales does not meet Milstead's burden to establish that the remaining sales are retail sales. By failing to present summary judgment evidence showing the rest of its sales fit the definition of "retail sales," i.e.,

10

that they are (1) not for resale and (2) are recognized as retail sales or services in the automotive services industry, Milstead has failed to identify a fact issue remaining for trial on whether 75% of its 2018-2021 revenue derived from retail sales. *See Acme Car & Truck Rentals, Inc. v. Hooper*, 331 F.2d 442, 447 (5th Circuit 1964) (determining whether at least 75% of sales or services are retail "requires analysis of specific sales and services"). Because Milstead has not met its burden to identify a fact issue on an essential element of the retail or service establishment exemption of § 207(i), Plaintiffs are entitled to summary judgment on Milstead's affirmative defense.

For the sake of completeness, and because the issues may impact the good faith and willfulness issues, the Court addresses the other elements of the § 207(i) exemption below.

### 2. Milstead has not met its summary judgment burden to demonstrate a fact issue on whether Plaintiffs' regular rate of pay was one and a half times the minimum wage.

To establish the 207(i) exemption, the employer must show that the employee's "regular rate of pay" was at least $10.88 per hour, which is one and one-half times the federal minimum wage of $7.25 per hour. *Leal*, 855 F. App'x at 929. When an employee is not paid on an hourly rate basis, as here, the regular rate is determined by dividing the employee's total pay during one week by the number of hours he worked that week. *Id.* (citing 29 C.F.R. § 778.109 (2021)).

Plaintiffs contend that Milstead's pay scheme violates the FLSA because Milstead "programmed its payroll calculators to pay less than the minimum." ECF 48 at 26. Plaintiffs have presented summary judgment evidence demonstrating that some Plaintiffs were not paid $10.88 per hour in some weeks. For example, Leonicio Cantu worked 60.73 hours in the week ending April 18, 2021, and earned $423.35 in commissions. ECF 48 at 11; ECF 48-11. Cantu was paid $92.19 in addition to his commissions for a total of $515.54, or $8.49 per hour. ECF 48

at 11; ECF 48-11.3. This example illustrates that Milstead's pay scheme was designed to pay $7.25 for every hour under 40, and $10.88 for every hour over 40 that a tow driver worked in a week. Thus, Milstead's pay scheme does not meet the requirement in § 207(i) that the employee's "regular rate" must be one and half times minimum wage. Had Milstead used the proper formula, Cantu would have been paid a supplement of $237.39, for total pay of $660.74, or $10.88 per hour for every hour worked.

Milstead concedes that it paid some Plaintiffs less than $10.88 per hour in some weeks. *See* ECF 53 at 21; Tr. at 10:44.[7] Milstead argues that regardless of that fact, the one-and-a-half-times-the-regular-rate-of-pay requirement applies only on a week-to-week basis, and therefore it can be held liable for unpaid overtime only as to the specific employees for whom it failed to pay the minimum rate in any specific week. *Id.* Although little authority exists in the Fifth Circuit on this point, the weight of authority supports Milstead's position that the "regular rate" aspect of the exemption can be applied on a week-to-week basis. *See Pittman v. McClain' R.V., Inc.*, No. 4:12-CV-542, 2013 WL 12139092 at *7 (E.D. Tex. Jun. 12, 2013) (employer was not exempt from paying overtime compensation for weeks in which the employee worked more than 40 hours but made less than $10.88 per hour); *Johnson v. Wave Comm GR LLC*, 4 F. Supp 3d 423, 446 (N.D.N.Y. 2014) (the 207(i) exemption only applies in weeks in which the employer satisfied the requirement that the regular rate of pay was at least one and one-half times the minimum wage); *Owopetu v. Nationwide CATV Auditing Services*, No. 5:10-cv-18, 2011 WL 883703 at *11 (D. Vt. Mar. 11, 2011) (holding employer was not exempt for weeks in which the employee worked overtime hours but earned a regular rate of less than $10.88); *see also* 29 C.F.R. § 779.419(a) (if

---

[7] Plaintiffs estimate Milstead failed 75-80% of the time. Tr. at 10:34.

an employee's regular rate is not more than one and one-half times such minimum rate, "there is no overtime pay exemption for the employee *in that particular workweek*." (emphasis added)).

However, Milstead has failed to present any analysis or evidence showing how often it failed to pay each employee $10.88 per hour in order to meet the regular rate of pay requirement for the 207(i) exemption. Tr. at 10:44. Thus, even if the Court were to find that Milstead had met its burden as the other elements of the 207(i) exemption, which it does not, summary judgment would be appropriate on behalf of all Plaintiffs for all weeks in which they were not paid $10.88 per hour.

### 3. Milstead has not met its summary judgment burden to demonstrate a fact issue as to whether 50% or more of Plaintiffs' pay consisted of bona fide commissions.

Milstead argues it meets this requirement of § 207(i) because it paid Plaintiffs *solely* by commissions. ECF 53 at 22 (emphasis in original). Plaintiffs, on the other hand, argue the commissions were not true, or "bona fide," commissions. ECF 48 at 27-28.

The FLSA does not define the term "commission." *Taylor v. HD & Assocs., L.L.C.*, 45 F.4th 833, 839 (5th Cir. 2022). After the parties completed summary judgment briefing in this case, the Fifth Circuit adopted a definition of "commission" that incorporates the following four features:

> (1) whether the commission is a 'percentage or proportion of the ultimate price passed on to the consumer;' (2) whether the commission is 'decoupled from actual time worked, so that there is an incentive for the employee to work more efficiently and effectively;' (3) the type of work is such that its 'peculiar nature' does not lend itself to a standard eight-hour work day; and (4) whether the commission system 'offend[s] the purposes of the FLSA.'

13

*Id.* No one factor is dispositive, but the first two carry the most weight. *Id.* Whether a payment is a commission is a question of law that is determined "by how a payment works in practice, rather than what it is called." *Id.*

Contrary to Milstead's argument, it did not pay Plaintiffs' solely by commission. Milstead's own explanation of its pay scheme establishes that it paid a commission tied to the price paid by the customer, and then added a supplement that was *not* tied to the price paid by the customer, but was intended to ensure that Plaintiffs were paid $10.88 per hour. *See* ECF 53-1 ¶¶ 7, 9. Thus in practice, Milstead did not pay Plaintiffs according to a pure commission scheme, but rather by a scheme that attempted to ensure payment of a minimum wage of $10.88 per hour.

Plaintiffs primarily argue[8] that their pay did not reflect a hallmark requirement of a commission—that it be "decoupled from actual time worked, so that there is an incentive for the employee to work more efficiently and effectively." ECF 48 at 27 (citing 29 C.F.R. § 779.414). In *Taylor*, cable technicians were paid by the number of points assigned to a job, no matter how long the job took to complete. 45 F.4th at 840. The Fifth Circuit recognized that although there was no guarantee that a cable installation technician would receive more work orders, the employer's commission pay scheme clearly gave technicians an incentive to work faster in order to handle more work orders. *Id.* In this case, it is hard to imagine how the "commission" paid to Plaintiffs operated as an incentive to work faster in order to earn more, rather than an incentive to work longer hours in order to earn more. Tow truck drivers, as opposed to cable installers, have

---

[8] Plaintiffs also argue that under DOL regulations commissions are "generally employed in so-called 'big ticket' departments" like sales of furniture, major appliances, and custom orders. ECF 48 at 27. However, when defining "commission," the Fifth Circuit did not incorporate the concept of a "big ticket" item. *See Taylor*, 45 F.4th at 839-40. The Fifth Circuit's decision in *Taylor* that payments to cable installation technicians were bona fide commissions implies that whether a product or service is a "big ticket" item is not an integral requirement of a commission.

14

little control over how quickly they complete an individual job: assignments for tows are made by dispatchers; they have no ability to drum-up business or negotiate prices; they can work only one job at a time; they often have long waits during or between assignments, particularly at accident scenes where the driver has to wait for officers to assign the tow to one of several drivers and to release the vehicle for towing; and they are limited by traffic laws in how quickly that can tow a vehicle from point A to point B. ECF 48 at 9-10 (citing ordinances and Richter deposition). Milstead's counsel conceded at the hearing that the drivers' pay was largely tied to hours worked, but argued, without citation to evidence, that a driver did have some control over what hours he worked and could choose to work on weekends or during rush hour, times when more work tends to be available. Tr. at 11:09. Milstead has presented very little evidence to support its claim that 50% of Plaintiffs' pay consisted of bona fide commissions, but due to the findings with respect to the other two elements of the retail exemption, the Court need not determine this element as a matter of law.

### D. Milstead has not met its summary judgment burden to demonstrate a fact issue on its good faith defense to Plaintiff's liquidated damages claim.

Under FLSA § 260, liquidated damages are mandatory unless the employer meets its "substantial burden" to prove to the Court's satisfaction that its actions were reasonable and taken in the good faith belief that its actions did not violate the FLSA. *Rosales v. Indus. Sales & Servs.*, LLC, No. 6:20-CV-00030, 2022 WL 4751171, at *10 (S.D. Tex. Sept. 30, 2022) (citing *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016)). Good faith incorporates a duty to investigate; an employer cannot rely on ignorance as reasonable grounds for violating the FLSA. *Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022 WL 658768, at *7 (S.D. Tex. Mar. 4, 2022), report and recommendation adopted, No. 3:19-CV-00320, 2022 WL 889276 (S.D.

15

Tex. Mar. 25, 2022). "A district court's 'evaluation of the evidence supporting good faith and reasonableness, however, is a discretionary determination'" reviewed by the Fifth Circuit for abuse of discretion. *Rosales*, 2022 WL 4751171, at *10 (internal citation omitted). A finding of good faith merely gives the Court discretion to deny liquidated damages, it does not require the denial of liquidated damages. *Id.*

An employer may show good faith by proving that it consulted a lawyer and complied with advice regarding FLSA requirements. *See Gentry*, 2022 WL 658768, at *7 (stating reliance on the advice of the DOL or the advice of counsel is the most common way of proving good faith). Milstead has submitted the Affidavit of its President, Amy Milstead, stating that in 2017 the company was advised by an attorney with the law firm Ogletree Deakins, that it "would qualify for an exemption to the overtime requirement, based on its customer sales, so long as the drivers earn at least 50% of their income from commissions, and are paid at least one and one-half the minimum wage for all hours worked in overtime weeks ($10.88 per hour)." ECF 53-1 ¶ 8. However, as discussed above, the evidence shows that Milstead did not comply with the advice of counsel by paying all tow truck drivers at least $10.88 per hour. Moreover, Milstead has not presented any evidence that it made any effort after 2017 to ensure that it qualified for the exemption "based on its customer sales," which are viewed on an annual basis. *See* 53-1; 29 C.F.R. § 779.411 (75% requirement of exemption is based on annual dollar volume of sales). The record establishes that Milstead cannot meet its substantial burden to demonstrate that it acted in good faith and with the reasonable belief that its pay scheme complied with the FLSA. Therefore, the Court grants Plaintiffs' Motion for Summary Judgment on its entitlement to an award of liquidated damages in an amount equal to their recovery of unpaid overtime.

### E. Plaintiffs have not met their burden to show willfulness as a matter of law.

While the burden to show good faith rests on the employer, the burden of demonstrating a willful violation of the FLSA rests on the employee. *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018), as amended on denial of reh'g and reh'g en banc (Feb. 1, 2019); *Rosales*, 2022 WL 4751171, at * 11. A willful violation occurs when the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Dacar*, 914 F.3d at 926. Willfulness is more than mere negligence and "is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" *Rosales*, 2022 WL 4751171, at * 11 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

The summary judgment record demonstrates that although Milstead sought the advice of counsel in 2017 before implementing the pay scheme for 2018-2021, Milstead failed to comply with counsel's advice on how to properly pay its drivers in order to fully comply with the FLSA. Even so, Plaintiffs' have not met their burden to establish that, as a matter of law, Milstead's failure to comply with the FLSA was deliberate and intentional rather than merely negligent. Therefore, Plaintiffs' Motion for Summary Judgment as to willfulness, which would afford the application of a 3-year statute of limitations, is denied and the issue remains for trial.

### IV. Conclusion and Order

For the reasons discussed above, Plaintiffs' Partial Motion for Summary Judgment is GRANTED as to Defendant's affirmative defense under § 207(i) and Plaintiffs' entitlement to liquidated damages; and DENIED as to Defendant's willfulness and the applicability of a 3-year statute of limitations.

The parties are to submit a within 14 days of entry of this Memorandum Opinion and Order an agreed proposed trial schedule and a joint statement regarding the status of the FMLA claim originally asserted on behalf of Michael Lee Jones, Jr.

Signed on March 09, 2023, at Houston, Texas.

                                                */s/ Christina A. Bryan*
                                                Christina A. Bryan
                                           United States Magistrate Judge